APPEAL,LTFREQ,TYPE−D

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:26−cv−03287−TJK

CABLE NEWS NETWORK, INC. et al v. TRUMP et al
Assigned to: Judge Timothy J. Kelly
Cause: 28:1343 Violation of Civil Rights

Date Filed: 09/21/2026
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Movant**

**LUIS THOMAS JACOB LEAL, SR.** represented by **LUIS THOMAS JACOB LEAL, SR.**
3332 Stanhope Drive
Toledo, OH 43606
(419) 932−0767
Fax: (419) 534−2667
PRO SE

**Movant**

**ROBERT TATUM** represented by **ROBERT TATUM**
P.O. Box 19033
Green Bay, WI 54307
PRO SE

**Plaintiff**

**CABLE NEWS NETWORK, INC.** represented by **Connor Philip Mui**
GIBSON, DUNN & CRUTCHER
1700 M Street, NW
Washington, DC 20895
973−234−4425
Email: cmui@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166
212−351−2459
Email: cssullivan@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
213−229−7839
Email: ktownsend@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Avenue
Los Angeles, CA 90017
213−229−7117
Email: pfuster@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229−7804
Fax: (213) 229−6804
Email: tboutrous@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MS NOW CABLE, LLC** represented by **Connor Philip Mui**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**POLITICO LLC** represented by **Connor Philip Mui**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AKAYLA GARDNER** represented by **Connor Philip Mui**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHEYENNE HASLETT** represented by **Connor Philip Mui**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BETSY KLEIN** represented by **Connor Philip Mui**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Connor S. Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**KatieLynn Boyd Townsend**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick James Fuster**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Theodore J. Boutrous , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the United States*
represented by **Michael Kenneth Velchik**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202−860−8388
Email: michael.velchik@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**STEVEN CHEUNG**
*in his official capacity as Assistant to the President for Communications*
represented by **Michael Kenneth Velchik**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **SEAN M. CURRAN**<br>*in his official capacity as Director of the Secret Service* | represented by | **Michael Kenneth Velchik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **SUSAN WILES**<br>*in her official capacity as White House Chief of Staff* | represented by | **Michael Kenneth Velchik**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS** | represented by | **Bruce D. Brown**<br>REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS<br>1156 15th St, NW<br>Suite 1020<br>Washington, DC 20005<br>(202) 795−9301<br>Fax: (202) 795−9310<br>Email: bruce.brown@rcfp.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **77 MEDIA ORGANIZATIONS** | represented by | **Bruce D. Brown**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **AMERICAN CIVIL LIBERTIES UNION** | represented by | **Scott Michelman**<br>ACLU FOUNDATION OF THE DISTRICT OF COLUMBIA<br>529 14th Street NW<br>Suite 420<br>Washington, DC 20045<br>202−601−4267<br>Email: smichelman@acludc.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA** | represented by | **Scott Michelman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC.** | represented by | **Deborah B. Baum**<br>PILLSBURY WINTHROP SHAW PITTMAN, LLP<br>1200 Seventeenth Street N.W.<br>Washington, DC 20036<br>(202) 663−8772<br>Fax: (202) 663−8007<br>Email: deborah.baum@pillsburylaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE** | represented by | **Olivia N. Sedwick**<br>NAACP<br>4805 Mt Hope Drive<br>Baltimore, MD 21215<br>410−580−5777<br>Email: osedwick@naacpnet.org<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION OF BLACK JOURNALISTS** | represented by | **Olivia N. Sedwick**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **NATIONAL NEWSPAPER PUBLISHERS ASSOCIATION** | represented by | **Olivia N. Sedwick**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **APRIL D. RYAN** | represented by | **Olivia N. Sedwick**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Movant**

| | | |
|---|---|---|
| **BOREALIS S. HEDLING**<br>*TERMINATED: 10/01/2026* | represented by | **BOREALIS S. HEDLING**<br>Travelodge Plus Dublin City Centre<br>44 Townsend Street<br>Room 120<br>Dublin 2<br>Ireland<br>PRO SE |

| Date Filed | # | Docket Text |
|---|---|---|
| 09/21/2026 | 1 | COMPLAINT *FOR DECLARATORY AND INJUNCTIVE RELIEF* against Steven Cheung, DONALD J. TRUMP, SUSAN WILES ( Filing fee $ 405 receipt number ADCDC−12686613) filed by Betsy Klein, POLITICO LLC, MS NOW Cable, LLC, CABLE NEWS NETWORK, INC., Akayla Gardner, Cheyenne Haslett. (Attachments: # 1 Civil Cover Sheet, # 2 Summons, # 3 Summons, # 4 Summons, # 5 Summons, # 6 Summons, # 7 Summons)(Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 2 | MOTION for Temporary Restraining Order by CABLE NEWS NETWORK, INC., Akayla Gardner, Cheyenne Haslett, Betsy Klein, MS NOW Cable, LLC, POLITICO LLC. (Attachments: # 1 Memorandum in Support, # 2 Declaration A. Gardner, # 3 Declaration B. Klien, # 4 Declaration C Haslett, # 5 Declaration D. Vigilante, # 6 Declaration J. Marsh, # 7 Declaration S. Reddy, # 8 Declaration T. Boutrous, # 9 Affidavit Certificate of Counsel re Actual Notice)(Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | | Case Assigned to Judge Timothy J. Kelly. (zmtm) (Entered: 09/21/2026) |
| 09/21/2026 | 3 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by CABLE NEWS NETWORK, INC. (Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 4 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by MS NOW Cable, LLC (Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 5 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by POLITICO LLC (Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 6 | NOTICE of Appearance by KatieLynn Boyd Townsend on behalf of All Plaintiffs (Townsend, KatieLynn) (Entered: 09/21/2026) |
| 09/21/2026 | 7 | NOTICE of Appearance by Connor S. Sullivan on behalf of All Plaintiffs (Sullivan, Connor) (Entered: 09/21/2026) |
| 09/21/2026 | 8 | NOTICE of Proposed Order by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 2 MOTION for Temporary Restraining Order (Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 9 | NOTICE of Appearance by Theodore J. Boutrous, Jr on behalf of All Plaintiffs (Boutrous, Theodore) (Entered: 09/21/2026) |
| 09/21/2026 | 10 | SUMMONS (6) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 09/21/2026) |
| 09/21/2026 | 11 | NOTICE of Appearance by Connor Philip Mui on behalf of All Plaintiffs (Mui, Connor) (Entered: 09/21/2026) |
| 09/21/2026 | 12 | NOTICE of Appearance by Michael Kenneth Velchik on behalf of All Defendants (Velchik, Michael) (Entered: 09/21/2026) |
| 09/21/2026 | 13 | STANDING ORDER. See Order for details. Signed by Judge Timothy J. Kelly on 9/21/26. (lctjk2) (Entered: 09/21/2026) |
| 09/21/2026 | | MINUTE ORDER: It is hereby ORDERED that Defendants shall file any response to Plaintiffs' 2 Motion for a Temporary Restraining Order by September 22, 2026. It is |

| | | |
|---|---|---|
| | | further ORDERED that a hearing on Plaintiffs' 2 Motion for a Temporary Restraining Order is set for 3:30 p.m. on September 23, 2026, via videoconference. The parties shall contact the Courtroom Deputy at (202) 354−3495 at least one business day before the hearing to make arrangements to participate. Signed by Judge Timothy J. Kelly on 9/21/26. (lctjk2) (Entered: 09/21/2026) |
| 09/22/2026 | | NOTICE: A public access line will be provided for the Motion Hearing being held September 23rd at 3:30PM. The information for the public access line is as follows: the toll−free number is 833−990−9400, and the Meeting ID is 433360750. Persons remotely accessing the hearing are reminded that recording of any proceedings is strictly prohibited by federal law. (zkh) (Entered: 09/22/2026) |
| 09/22/2026 | 14 | NOTICE OF SUPPLEMENTAL AUTHORITY by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC (Attachments: # 1 Supplement USCA DC Circuit Opinion)(Boutrous, Theodore) (Entered: 09/22/2026) |
| 09/22/2026 | 15 | DECLARATION *SUPPLEMENT OF THEODORE J. BOUTROUS, JR. IN SUPPORT OF PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER* by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 2 MOTION for Temporary Restraining Order . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Boutrous, Theodore) Modified docket text on 9/23/2026 (mg). (Entered: 09/22/2026) |
| 09/22/2026 | 16 | RESPONSE re 2 MOTION for Temporary Restraining Order filed by STEVEN CHEUNG, SEAN M. CURRAN, DONALD J. TRUMP, SUSAN WILES. (Attachments: # 1 Exhibit CNN Letter, # 2 Exhibit MSNOW Letter, # 3 Exhibit Politico Letter, # 4 Declaration Brown, # 5 Declaration Wilson)(Velchik, Michael) (Entered: 09/22/2026) |
| 09/23/2026 | 17 | NOTICE of Appearance by Bruce D. Brown on behalf of REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS (Brown, Bruce) (Entered: 09/23/2026) |
| 09/23/2026 | 18 | Unopposed MOTION for Leave to File Amicus Brief *of Reporters Committee for Freedom of the Press, White House Correspondents Association, and 49 Media Organizations* by REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS. (Attachments: # 1 Proposed Brief of Amici Curiae, # 2 Proposed Order)(Brown, Bruce) (Entered: 09/23/2026) |
| 09/23/2026 | 19 | ERRATA by REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS re 18 Motion for Leave to File Amicus Brief,. (Brown, Bruce) (Entered: 09/23/2026) |
| 09/23/2026 | 20 | DECLARATION *SUPPLEMENT OF THEODORE J. BOUTROUS, JR. IN SUPPORT OF PLAINTIFFS MOTION FOR A TEMPORARY RESTRAINING ORDER* by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 2 MOTION for Temporary Restraining Order . (Boutrous, Theodore) (Entered: 09/23/2026) |
| 09/23/2026 | 21 | DECLARATION *SUPPLEMENT OF SUDEEP REDDY* by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 2 MOTION for Temporary Restraining Order . (Boutrous, Theodore) (Entered: 09/23/2026) |
| 09/23/2026 | 22 | |

| | | |
|---|---|---|
| | | DECLARATION *SUPPLEMENT OF DAVID VIGILANTE* by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 2 MOTION for Temporary Restraining Order . (Boutrous, Theodore) (Entered: 09/23/2026) |
| 09/23/2026 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Remote VTC Motion Hearing held on 9/23/2026. Oral argument heard on Plaintiffs' 2 MOTION for Temporary Restraining Order, and taken under advisement. (Court Reporter: Tammy Nestor) (zkh) (Entered: 09/23/2026) |
| 09/23/2026 | 23 | DECLARATION *Supplemental Notice* by STEVEN CHEUNG, SEAN M. CURRAN, DONALD J. TRUMP, SUSAN WILES. (Attachments: # 1 Exhibit, # 2 Exhibit)(Velchik, Michael) (Entered: 09/23/2026) |
| 09/23/2026 | 38 | MOTION to Intervene by BOREALIS S. HEDLING. (Attachments: # 1 Disclosure, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11)(znmw) (Entered: 09/30/2026) |
| 09/23/2026 | 39 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: JONATHAN B. SALDIVAR−KITTO − Proposed Amicus Brief. Reason(s): Motion for Leave to File not submitted with proposed brief. (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service) (znmw) (Entered: 09/30/2026) |
| 09/24/2026 | | MINUTE ORDER: For the reasons set forth in Reporters Committee for Freedom of the Press, White House Correspondents' Association, and 49 Media Organizations' 18 Unopposed Motion for Leave to File Amicus Brief, and because Plaintiffs and Defendants consent to the relief sought, it is hereby ORDERED that Reporters Committee for Freedom of the Press, White House Correspondents' Association, and 49 Media Organizations' 18 Motion is GRANTED. Signed by Judge Timothy J. Kelly on 9/24/26. (lctjk2) (Entered: 09/24/2026) |
| 09/24/2026 | 24 | Temporary Restraining Order. See Order for details. Signed by Judge Timothy J. Kelly on 9/24/26. (lctjk2) Modified to change document type on 9/25/2026 (zkh). (Entered: 09/24/2026) |
| 09/24/2026 | 25 | MOTION for Hearing *of Defendants' Non−Compliance with Temporary Restraining Order and Request for Immediate Hearing* by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC (Townsend, KatieLynn) Modified on 10/1/2026 to correct event (zjm). (Entered: 09/24/2026) |
| 09/24/2026 | 26 | ERRATA *(CORRECTED) of Defendants' Non−Compliance with Temporary Restraining Order and Request for Immediate Hearing* by AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC re 25 Notice (Other) (Townsend, KatieLynn) Modified on 10/1/2026 to correct event (zjm). (Entered: 09/24/2026) |
| 09/24/2026 | | MINUTE ORDER: It is hereby ORDERED that Defendants shall respond to Plaintiffs' 25 Notice of Non−Compliance by 12:30 p.m. today, September 24, 2026. Signed by Judge Timothy J. Kelly on 9/24/26. (lctjk2) (Entered: 09/24/2026) |
| 09/24/2026 | 27 | ENTERED IN ERROR.....DECLARATION by STEVEN CHEUNG, SEAN M. CURRAN, DONALD J. TRUMP, SUSAN WILES. (Velchik, Michael) Modified on 9/24/2026 (zjm). (Entered: 09/24/2026) |

| | | |
|---|---|---|
| 09/24/2026 | | NOTICE OF ERROR regarding 27 Declaration. The following error(s) need correction: Missing court header/case caption/case number. Please refile. (zjm) (Entered: 09/24/2026) |
| 09/24/2026 | | MINUTE ORDER: In light of Defendants' 28 Supplemental Declaration, it is hereby ORDERED that, to the extent Plaintiffs request an emergency hearing in their 25 Notice, their request is DENIED. Plaintiffs may file any supplemental notice informing the Court of any relevant factual developments no earlier than 6:00 p.m. today, September 24, 2026. Signed by Judge Timothy J. Kelly on 09/24/26. (lctjk2) Modified to correct document number on 9/24/2026 (zkh). (Entered: 09/24/2026) |
| 09/24/2026 | | MINUTE ORDER: It is hereby ORDERED that Plaintiffs shall file any motion for a preliminary injunction by September 28, 2026, Defendants shall file their response by October 2, 2026, and Plaintiffs shall file any reply by October 5, 2026. The Court will set a hearing at a later date but intends to rule expeditiously on the motion for a preliminary injunction. Signed by Judge Timothy J. Kelly on 09/24/26. (lctjk2) (Entered: 09/24/2026) |
| 09/24/2026 | 28 | DECLARATION *of Micah Stopperich* by STEVEN CHEUNG, SEAN M. CURRAN, DONALD J. TRUMP, SUSAN WILES. (Velchik, Michael) (Entered: 09/24/2026) |
| 09/25/2026 | 29 | TRANSCRIPT OF PROCEEDINGS before Judge Timothy J. Kelly held on 9/23/26; Page Numbers: 1−39. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/16/2026. Redacted Transcript Deadline set for 10/26/2026. Release of Transcript Restriction set for 12/24/2026.(Nestor, Tammy) (Entered: 09/25/2026) |
| 09/25/2026 | 30 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− PATRICK J. FUSTER, Filing fee $ 100, receipt number ADCDC−12701059. Fee Status: Fee Paid. by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC. (Attachments: # 1 Declaration of PATRICK J. FUSTER, # 2 Exhibit CERTIFICATE OF GOOD STANDING, # 3 Text of Proposed Order)(Boutrous, Theodore) Modified on 9/28/2026 to correct filer at the request of counsel (zjm). (Entered: 09/25/2026) |
| 09/28/2026 | | DEPOSIT of Funds for Bond in the amount of $ 1.00, pursuant to 24 Order. Receipt Number 212644. (znmw) (Entered: 09/28/2026) |
| 09/28/2026 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: Before the Court is Plaintiffs' 30 Motion for Leave to Appear Pro Hac Vice. It is hereby ORDERED that the 30 Motion is GRANTED. It is further ORDERED that Patrick J. Fuster is admitted pro hac vice to appear in this matter on behalf of Plaintiffs. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Timothy J. Kelly on 09/28/2026. (lctjk2) (Entered: 09/28/2026) |
| 09/28/2026 | 31 | NOTICE of Appearance by Patrick James Fuster on behalf of CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC (Fuster, Patrick) (Entered: 09/28/2026) |
| 09/28/2026 | 32 | MOTION for Preliminary Injunction by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Theodore J. Boutrous, Jr., # 3 Exhibit A − Boutrous Declaration, # 4 Exhibit B − Boutrous Declaration, # 5 Exhibit C− Boutrous Declaration, # 6 Exhibit D − Boutrous Declaration, # 7 Exhibit E − Boutrous Declaration, # 8 Exhibit F − Boutrous Declaration, # 9 Exhibit G − Boutrous Declaration, # 10 Exhibit H − Boutrous Declaration, # 11 Exhibit I − Boutrous Declaration, # 12 Exhibit J − Boutrous Declaration, # 13 Exhibit K − Boutrous Declaration, # 14 Exhibit L − Boutrous Declaration, # 15 Exhibit M − Boutrous Declaration, # 16 Declaration of Akayla Gardner, # 17 Declaration of Cheyenne Haslett, # 18 Declaration of Betsy Klein, # 19 Declaration of Julia Marsh, # 20 Declaration of Sudeep Reddy, # 21 Declaration of David Vigilante, # 22 Declaration of Scott Waldman, # 23 Text of Proposed Order)(Boutrous, Theodore) (Entered: 09/28/2026) |
| 09/29/2026 | 33 | Consent MOTION for Leave to File Amicus Brief*in support of Plaintiffs* by AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF THE DISTRICT OF COLUMBIA. (Attachments: # 1 Text of Proposed Order, # 2 Proposed Amicus Brief of ACLU & ACLU−DC in support of Plaintiffs)(Michelman, Scott) (Entered: 09/29/2026) |
| 09/29/2026 | 34 | NOTICE of Appearance by Deborah B. Baum on behalf of SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC. (Baum, Deborah) (Entered: 09/29/2026) |
| 09/29/2026 | 35 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Yaara Z Barnoon, Filing fee $ 100, receipt number ADCDC−12709213. Fee Status: Fee Paid. by SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC.. (Attachments: # 1 Declaration Declaration of Yaara Barnoon in Support of Motion for Admission Pro Hac Vice, # 2 Certificate of Good Standing, # 3 Proposed Order)(Baum, Deborah) (Entered: 09/29/2026) |
| 09/29/2026 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Anne Voigts, Filing fee $ 100, receipt number ADCDC−12709231. Fee Status: Fee Paid. by SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC.. (Attachments: # 1 Declaration Declaration of Anne Voigts, # 2 Certificate of Good Standing, # 3 Proposed Order)(Baum, Deborah) (Entered: 09/29/2026) |
| 09/29/2026 | 37 | MOTION for Leave to File Amicus Brief by SOCIETY FOR THE RULE OF LAW AND DEMOCRACY, INC.. (Attachments: # 1 Brief, # 2 Proposed Order)(Baum, Deborah) (Entered: 09/29/2026) |
| 09/30/2026 | | MINUTE ORDER: For the reasons set forth in American Civil Liberties Union and American Civil Liberties Union of the District of Columbia's 33 Consent Motion for Leave to File Amicus Brief, and because Plaintiffs and Defendants consent to the relief |

| | | |
|---|---|---|
| | | sought, it is hereby ORDERED that American Civil Liberties Union and American Civil Liberties Union of the District of Columbia's 33 Motion is GRANTED. Signed by Judge Timothy J. Kelly on 09/30/2026. (lctjk2) (Entered: 09/30/2026) |
| 09/30/2026 | 40 | Unopposed MOTION for Leave to File Amicus Brief *of the Reporters Committee for Freedom of the Press and 77 Media Organizations* by REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS. (Attachments: # 1 Proposed Brief of Amici Curiae, # 2 Text of Proposed Order)(Brown, Bruce) (Entered: 09/30/2026) |
| 10/01/2026 | | MINUTE ORDER: Upon consideration of the Society for the Rule of Law's 35 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the 35 Motion is GRANTED. It is further ORDERED that Yaara Z. Barnoon is admitted pro hac vice to appear in this matter on behalf of the Society for the Rule of Law, amicus curiae. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Timothy J. Kelly on 10/01/2026. (lctjk2) (Entered: 10/01/2026) |
| 10/01/2026 | | MINUTE ORDER: Upon consideration of the Society for the Rule of Law's 36 Motion for Leave to Appear Pro Hac Vice, it is hereby ORDERED that the 36 Motion is GRANTED. It is further ORDERED that Anne Voigts is admitted pro hac vice to appear in this matter on behalf of the Society for the Rule of Law, amicus curiae. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)** Click for instructions. Signed by Judge Timothy J. Kelly on 10/01/2026.(lctjk2) (Entered: 10/01/2026) |
| 10/01/2026 | | MINUTE ORDER: For the reasons set forth in the Society for the Rule of Law's 37 Motion for Leave to File Amicus Brief, it is hereby ORDERED that the Society for the Rule of Law's 37 Motion is GRANTED. Signed by Judge Timothy J. Kelly on 10/01/2026. (lctjk2) (Entered: 10/01/2026) |
| 10/01/2026 | | MINUTE ORDER: Before the Court is Borealis S. Helding's 38 Motion to Intervene. Under Rule 24(a), a court must permit anyone to intervene on timely motion if the movant is given an unconditional right to intervene by a federal statute or claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a). Under Rule 24(b), a court may permit anyone to intervene who is given a conditional right to intervene by a federal statute or has a claim or defense that shares with the main action a common question of law or fact. *Id.* 24(b)(1). Helding's 38 Motion fails to show that he is entitled to intervene as of right, or that the Court should permit him to do so. For these reasons, is it hereby ORDERED that Helding's 38 Motion is DENIED. It is further ORDERED that Helding shall not file any further material on the docket without first obtaining leave of Court. Signed by Judge Timothy J. Kelly on 10/01/2026. (lctjk2) (Entered: 10/01/2026) |
| 10/01/2026 | | MINUTE ORDER: It is hereby ORDERED that the parties shall appear for a hearing on Plaintiffs' 32 Motion for Preliminary Injunction on October 8, 2026, at 11:00 a.m. in Courtroom 11. Members of the public may attend in person or by telephone. Toll free number: 833−990−9400. Meeting ID: 433360750. It is further ORDERED that those using the public−access telephone line shall adhere to the prohibition against photographing, recording, rebroadcasting, and livestreaming court proceedings, including those held by telephone or videoconference. *See* Standing Order 24−31 (JEB) (Sep. 18, 2024). Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of |

| | | |
|---|---|---|
| | | entry to future hearings, or other sanctions deemed necessary by the Court. Signed by Judge Timothy J. Kelly on 10/01/26. (lctjk2) (Entered: 10/01/2026) |
| 10/01/2026 | 41 | Consent MOTION for Leave to File Amicus Brief by NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL ASSOCIATION OF BLACK JOURNALISTS, NATIONAL NEWSPAPER PUBLISHERS ASSOCIATION, APRIL D. RYAN. (Attachments: # 1 Memorandum in Support amicus brief in support of Plaintiffs' preliminary injunction motion)(Sedwick, Olivia) Modified filers on 10/2/2026 (znmw). (Entered: 10/02/2026) |
| 10/02/2026 | | MINUTE ORDER: For the reasons set forth in the Reporters Committee for Freedom of the Press and 77 Media Organizations' 40 Unopposed Motion for Leave to File Amicus Brief, and because the parties consent, it is hereby ORDERED that the Reporters Committee for Freedom of the Press and 77 Media Organization's 40 Motion is GRANTED. Signed by Judge Timothy J. Kelly on 10/02/2026. (lctjk2) (Entered: 10/02/2026) |
| 10/02/2026 | 42 | ERRATA *Notice of Errata* by NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, NATIONAL ASSOCIATION OF BLACK JOURNALISTS, NATIONAL NEWSPAPER PUBLISHERS ASSOCIATION, APRIL D. RYAN re 41 Motion for Leave to File Amicus Brief,. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Errata Corrected Table of Contents and Table of Authorities)(Sedwick, Olivia) (Entered: 10/02/2026) |
| 10/02/2026 | 43 | RESPONSE re 32 MOTION for Preliminary Injunction filed by STEVEN CHEUNG, SEAN M. CURRAN, DONALD J. TRUMP, SUSAN WILES. (Velchik, Michael) (Entered: 10/02/2026) |
| 10/05/2026 | | MINUTE ORDER: For the reasons set forth in NAACP's 41 Consent Motion for Leave to File Amicus Brief, filed on behalf of the National Association for the Advancement of Colored People, the National Association of Black Journalists, the National Newspaper Publishers Association, and April D. Ryan, and because the parties consent, it is hereby ORDERED that NAACP's 41 Motion is GRANTED. Signed by Judge Timothy J. Kelly on 10/5/2026. (lctjk2) (Entered: 10/05/2026) |
| 10/05/2026 | 44 | REPLY to opposition to motion re 32 Motion for Preliminary Injunction,,,, filed by CABLE NEWS NETWORK, INC., AKAYLA GARDNER, CHEYENNE HASLETT, BETSY KLEIN, MS NOW CABLE, LLC, POLITICO LLC. (Attachments: # 1 Supplemental Declaration of Theodore J. Boutrous, Jr., # 2 Exhibit N, # 3 Declaration of Julia Marsh, # 4 Declaration of Sudeep Reddy, # 5 Declaration of David Vigilante)(Boutrous, Theodore) (Entered: 10/05/2026) |
| 10/05/2026 | 45 | MOTION for Leave to File Amicus Brief by LUIS THOMAS JACOB LEAL, SR. (Attachments: # 1 Amicus Brief, # 2 Exhibits, # 3 IFP)(znmw) (Entered: 10/07/2026) |
| 10/05/2026 | 46 | MOTION to Intervene by ROBERT TATUM. (Attachments: # 1 Intervenor Complaint)(znmw) (Entered: 10/07/2026) |
| 10/08/2026 | | Minute Entry for proceedings held before Judge Timothy J. Kelly: Preliminary Injunction Hearing held on 10/8/2026. For the reasons stated on the record, the 24 Temporary Restraining Order is extended to 10/13/2026. Oral argument on Plaintiffs' 32 MOTION for Preliminary Injunction, heard and taken under advisement. (Court Reporter: Bryan Wayne) (zkh) (Entered: 10/08/2026) |
| 10/08/2026 | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: On September 24, 2026, the Court entered a temporary restraining order (TRO) that ordered Defendants (except President Trump) to "immediately return, reinstate, and restore the White House 'hard pass' press credentials held by employees of CNN, MS NOW, and POLITICO that were revoked on or about September 18, 2026." ECF No. 24 at 8. The Court ordered that the TRO be in effect for 14 days, or until today. As the Court informed the parties today, it had originally intended to schedule today's preliminary−injunction hearing two days ago, but delayed at the request of Plaintiffs' lead counsel, who identified a pressing personal matter requiring his attention. Thus, to allow the Court to fully consider the arguments made at today's hearing in deciding whether to enter a preliminary injunction, the Court finds that "good cause," *see* Fed. R. Civ. P. 65(b)(2), exists for a brief extension of the TRO for what amounts to two business days. Indeed, courts have found good cause for short extensions when "more time is needed fully to consider the parties' arguments and motions." *Costa v. Bazron*, No. 19−cv−3185 (RDM), 2020 WL 2410502, at *2 (D.D.C. May 11, 2020). Thus, it is hereby ORDERED that the TRO entered on September 24, 2026 is EXTENDED through October 13, 2026. Signed by Judge Timothy J. Kelly on 10/8/2026. (lctjk2) (Entered: 10/08/2026) |
| 10/09/2026 | 47 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Timothy J. Kelly held on October 8, 2026; Page Numbers: 1−47. Date of Issuance: 10/9/2026. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 10/30/2026. Redacted Transcript Deadline set for 11/9/2026. Release of Transcript Restriction set for 1/7/2027.(Wayne, Bryan) (Entered: 10/09/2026) |
| 10/09/2026 | 48 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests *SUPPLEMENT TO [DKT 3] LCvR 26.1 CERTIFICATE OF DISCLOSURE* by CABLE NEWS NETWORK, INC. (Boutrous, Theodore) (Entered: 10/09/2026) |
| 10/13/2026 | 49 | ORDER granting Plaintiffs' 32 Motion for Preliminary Injunction. See Order for details. Signed by Judge Timothy J. Kelly on 10/13/2026. (lctjk3) (Entered: 10/13/2026) |
| 10/13/2026 | 50 | MEMORANDUM OPINION in support of 49 ORDER granting Plaintiffs' 32 Motion for Preliminary Injunction. See Memorandum Opinion for details. Signed by Judge Timothy J. Kelly on 10/13/2026. (lctjk3) (Entered: 10/13/2026) |
| 10/14/2026 | 51 | NOTICE OF INTERLOCUTORY APPEAL TO DC CIRCUIT COURT as to 49 Order on Motion for Preliminary Injunction, Set/Reset Deadlines, 50 Memorandum & |

| | | |
|---|---|---|
| | | Opinion by DONALD J. TRUMP, SEAN M. CURRAN, SUSAN WILES, STEVEN CHEUNG. Fee Status: No Fee Paid. (Velchik, Michael) Modified event on 10/14/2026 (znmw). (Entered: 10/14/2026) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>*Defendants*. | Civil Action No. 1:26-cv-3287 |

**NOTICE OF APPEAL**

Defendants hereby respectfully provide notice of their appeal of this Court's opinion and order dated October 13, 2026, ECF Nos. 49 & 50, to the U.S. Court of Appeals for the District of Columbia Circuit.

Dated: October 14, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

ALEXANDER K. HAAS
Director

JOSEPH E. BORSON
Assistant Branch Director

/S/*Michael K. Velchik*
MICHAEL K. VELCHIK (DC Bar 187249)
Senior Counsel, Civil Division
United States Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
Phone: (202) 860-8388
E-mail: michael.velchik@usdoj.gov

MICHAEL BRUNS
Trial Attorney

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on October 14, 2026.

/s/Michael K. Velchik
MICHAEL K. VELCHIK

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC. et al.,<br>*Plaintiffs*,<br>v.<br>DONALD J. TRUMP et al.,<br>*Defendants*. | Civil Action No. 26-3287 (TJK) |

**MEMORANDUM OPINION**

On September 18, 2026, President Trump posted on social media that he was "proud to announce that, effective immediately," he was "banning" CNN, MS NOW, and POLITICO "from the White House." And sure enough, when reporters from those news organizations who hold "hard passes" allowing them to work there showed up the next day, they were denied entry. So Plaintiffs—these three news outlets and three individual hard pass holders who work for them—promptly sued the President and several Executive Branch officials, alleging that Defendants were violating their rights under the Fifth and First Amendments. They also moved for a temporary restraining order restoring their hard passes, which the Court granted. The Court found, under *Sherrill v. Knight*, 569 F.2d 124, 130–31 (D.C. Cir. 1977) and subsequent precedent, that Plaintiffs were likely to succeed on their claims that their hard passes were revoked without due process required under the Fifth Amendment, were likely to suffer irreparable harm without interim relief, and that the balance of the equities and the public interest tilted in their favor.

Now before the Court is Plaintiffs' motion for a preliminary injunction. The Court will grant that motion as well, finding that Plaintiffs are likely to succeed not only on their due process claim, but also on their two First Amendment claims. Still, no one should interpret the Court's

decision to suggest that President Trump's concerns about accuracy and fairness in the media's reporting are unfounded, or that the government is powerless when its true aim is to protect national security when classified information is unlawfully disclosed. That said, for the reasons explained below, the Court will extend the relief it already ordered, which will continue to preserve the status quo while this case proceeds.

## I. Background

For almost 60 years, the White House Press Secretary has provided journalists on the White House beat with "hard passes"—special press credentials that "allow[] its bearer to use an expedited security line and to enter the Press Area without an escort." *Ateba v. Leavitt*, 133 F.4th 114, 117 (D.C. Cir. 2025); *see also Karem v. Trump*, 960 F.3d 656, 659 (D.C. Cir. 2020). "The White House Press Area consists of the briefing room, the press offices, and certain other locations in and around the White House that are open to correspondents." *Ateba*, 133 F.4th at 117. Plaintiffs allege that a hard pass is an important credential because it "allows a reporter to react to fast-developing news" and gives them "swift and easy access to key official sources." ECF No. 1 ¶ 26.

On the afternoon of Friday, September 18, 2026, President Trump posted the following on social media:[1]



Donald J. Trump
@realDonaldTrump

I am proud to announce that, effective immediately, I am banning Fake News CNN, MSNOW (who recently changed their name from MSNBC due to lack of viewership and credibility!), and Politico (The recipients of an illegal and ridiculous $8 Million Dollar subscription, an All Time Record, directly from the United States Government, under Crooked Joe Biden, in order to keep them "alive." Seems like corruption to me!), from the White House as a result of their constant "reporting" FAKE NEWS! Media Outlets shouldn't be able to constantly write or report FICTION and LIES when they're covering the President of the United States, the Trump Administration, or the United States of America. Other Fake News Media Outlets to follow. Thank you for your attention to this matter! President DONALD J. TRUMP

**13.4k** ReTruths **54.6k** Likes Sep 18, 2026, 3:04 PM

About an hour later, President Trump was asked whether there was a "particular reason" for the ban. ECF No. 32-4 at 14. He answered, "No . . . it's really just cumulative stories over the last two years. . . . [T]hey purposely write negative news. And they do that because they want to try and diminish the Republicans and a Republican administration. And honestly, we've done a fantastic job. Look at the numbers, look at the economic numbers. We have more money coming into our country today than ever before." *Id.* He later added that he would "love it" if CNN, MS NOW, and POLITICO "could straighten themselves out." *Id.* at 27.

The next morning, several reporters from these three news organizations who hold hard passes—three of Plaintiffs here—allege that they reported for work at the White House complex. ECF No. 1 ¶¶ 49–52. They were informed that their hard passes had been deactivated or disabled and were denied entry by the U.S. Secret Service. *Id.* They were "unable to enter the White House

[1] Donald J. Trump (@realDonaldTrump), Truth Social (Sep. 18, 2026, 3:04 p.m.), ECF No. 32-3.

complex to attend briefings or events, report from their broadcast positions, or speak in person with White House officials and staff." ECF No. 32-1 at 25–26.

Two days after that, on Monday, September 21, CNN, MS NOW, and POLITICO released a statement about this impending lawsuit, and provided the government a copy of their complaint. ECF No. 32-1 at 22. President Trump responded on social media:[2]



Donald J. Trump
@realDonaldTrump

The White House is not instituting an assault on the Free Press, something which I cherish. It is instituting an assault on the FAKE NEWS, something that has grown like Cancer in our beloved United States of America. It is corrupt, purposeful, pervasive, fully coordinated, and totally out of control. It is a threat to our National Security, and must be stopped, NOW! Thank you for your attention to this matter. President DONALD J. TRUMP

7.3k ReTruths 27k Likes 9/21/26, 7:53 AM

Later that day, Plaintiffs sued and moved for a temporary restraining order. ECF Nos. 1, 2. They assert three claims for relief: that by revoking their hard passes and excluding them from the White House press area, Defendants (1) violated their procedural due process rights under the Fifth Amendment, and engaged in (2) retaliation and (3) viewpoint discrimination under the First Amendment. President Trump responded again:[3]

[2] Donald J. Trump (@realDonaldTrump), Truth Social (Sep. 21, 2026, 7:53 a.m.), ECF No. 32-5.

[3] Donald J. Trump (@realDonaldTrump), Truth Social (Sep. 21, 2026, 3:39 p.m.), ECF No. 32-6.

> **Donald J. Trump**
> @realDonaldTrump
>
> As expected, Fake News CNN, Politico (Pay back the 8 Million Dollar contribution made by the U.S. Government to keep them afloat!), and MSNOW (formerly known as MSDNC!), have brought suit to gain access to the White House, and your President, ME! They have drawn a great Judge, for them, a man who ruled in favor of Jim Acosta, who now seems to have disappeared from the Planet. The Judge's name is Tim Kelly, and he was, sadly, appointed by "TRUMP." In other words, almost without question and, as usual, we'll go for appeal because Fake News people and publications that only write negatively, and who violate our National Security by writing false and defamatory stories with unknown "sources," shouldn't be allowed access to the most important Office anywhere in the World. It is called the Oval Office, and it should be treated with Decorum, Respect, and Dignity, not defiled by Third Rate Clowns, who purposefully distort, twist, and degrade with everything they write or publish. Virtually every story about me, or anything having to do with me, is negative, wrong and, in many cases, DANGEROUS for our Country! No matter how GREAT my Achievements, they trivialize and demean. The fact is, I won all seven Swing States, the Popular Vote, the Electoral College (312 to 226), and the Counties throughout America by 86%, and yet it is reported that I get 94% bad publicity. With such a Crooked and Corrupt Press, how did I win in such a LANDSLIDE? It is because the Media has NO credibility, and that is a very bad thing for our Nation! Why should I have to give "access" to such people? Perhaps Judge Kelly could explain that! In any event, I have an obligation to fight for the Success and Safety of our Country. FAKE NEWS IS A THREAT TO DEMOCRACY, and I will do whatever is necessary to make sure that the U.S.A. thrives. MAKE AMERICA GREAT AGAIN! President DONALD J. TRUMP
>
> **6.89k** ReTruths **26.2k** Likes Sep 21, 2026, 3:39 PM

The next day, on September 22, the "White House Press Office" sent letters to the three media organizations at issue, purporting to provide them "notice that the President has made the determination to revoke hard passes for members of [their] organization[s]." ECF Nos. 16-1, 16-2, 16-3. Each letter, unsigned and not on official letterhead, informed the organizations that they had violated "the standards of professionalism and decorum expected of those given access to the White House Complex" by "trafficking in verifiable falsehoods about national security and other

issues" and "publishing sensitive or classified information." *Id.* Each letter included a "non-exhaustive" list of three to six "reporting incidents" that purportedly "threatened national security and/or spread falsehoods." *Id.* The letters invited each organization to "contest this initial decision or the factual basis set forth" by September 25, 2026, at 5:00 p.m. *Id.* Otherwise, the "decision w[ould] be final." *Id.*

The next day, the Court held a hearing on Plaintiffs' motion for a temporary restraining order, and the day after that, the Court granted the motion. *See* ECF Nos. 24, 29. The Court found that Plaintiffs had shown a likelihood of success, at least on their Fifth Amendment procedural due process claim, that they were likely to suffer irreparable harm absent relief, and that the balance of the equities and the public interest weighed in their favor. ECF No. 24. So the Court ordered "Defendants (except for President Trump) and their agents, representatives, and all persons or entities acting in concert with them [to] immediately return, reinstate, and restore the White House 'hard pass' press credentials held by employees of CNN, MS NOW, and POLITICO that were revoked on or about September 18, 2026." *Id.* at 8.

The day after that, Plaintiffs' counsel responded on behalf of his clients to the letter from the White House Press Office. ECF No. 32-11. Counsel's letter declined to address the substance of the allegations leveled against his clients. *Id.* He wrote that in "light of the District Court's temporary restraining order . . . we do not believe further response to those letters is warranted at this time." *Id.*

A day later, President Trump shared an article about this case on social media, and asked "[w]hy should perpetrators of FAKE NEWS, like CNN and MSDNC, be allowed access to a very sacred place, the White House? Despite my big Election Win, almost 100% of 'TRUMP' coverage is negative, and has been for years." ECF No. 32-12. The day after that, during a television

interview, Attorney General Todd Blanche commended the President for "d[oing] something" about the "years and years and years of one-sided media coverage of the president from certain outlets," adding that "at some point, the complete misinformation and the inaccuracy and the one-sided news . . . become[s] a national security issue." ECF No. 32-15 at 13–14.

The next day, President Trump sat for an interview with Time Magazine. ECF No. 44-2. He was asked: "Why should Americans believe that you respect the free press when you're restricting access to the White House to some of our colleagues?" *Id.* at 6. President Trump responded:

> Because I do respect the free press, but I don't respect fake news. I'll give you an example. CNN and MSDNC, which is MS Now they changed the name because it does so poorly. But I won the election. I won it handily by massive numbers. I won the popular vote. I won all seven swing states. They said if you won three swing states, I won all seven. I won the counties. It's very important, 86% popular vote. Everything, and very conclusively, I haven't had a good story on CNN for years. They're incapable of being—they're fake news. Same thing on MS NOW. If I do the finest thing, if I found the cure to cancer, they would say, "Why didn't he move quicker?" They are just horrible people, and they're so bad. So I believe in a free press. I believe in an honest press, but I don't believe in fake news. And I know it's fake because I know the thing—I don't mind, you know, if I do something wrong, I don't mind having a bad story. He's written a couple of times about something. I said, well listen, he's not wrong. But with the press, if somebody's going to call me, if every single story is—look, I've done a lot of good stuff. I'm in the Oval Office. I mean, the public is very smart. If I wasn't doing a good job, I wouldn't have won that election by a lot.[4]

That same day, Plaintiffs moved for a preliminary injunction. ECF No. 32. Defendants opposed the motion, Plaintiffs replied, and the Court held a hearing on October 8. ECF Nos. 43, 44, 47.

---

[4] ECF No. 44-2 at 6.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right," but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 24 (2008). To obtain that remedy, "plaintiffs bear the burden of persuasion on all four preliminary injunction factors." *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). The movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Where, as here, the government is the party opposing injunctive relief, the last two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. Analysis

Plaintiffs have met their burden: they have shown that they are likely to succeed on the merits of their claims, that without a preliminary injunction they are likely to suffer irreparable harm, and that the balance of the equities and the public interest tip in their favor. Thus, they have demonstrated they are entitled to an injunction that will continue to preserve the status quo while this case proceeds.

### A. Plaintiffs Are Likely to Succeed on the Merits

#### 1. Plaintiffs Are Likely to Succeed on their Due Process Claim

In their Fifth Amendment due process claim, Plaintiffs allege that Defendants revoked their hard passes, thereby denying them access to the White House press area, without constitutionally adequate process. ECF No. 1 ¶¶ 60–61. The merits of this claim are assessed in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations

omitted).

First, Plaintiffs have shown that they have a liberty interest in their hard passes. The Court need not dwell long on this issue, because the D.C. Circuit has already decided it. In *Sherrill*, the Circuit held that "the interest of a bona fide Washington correspondent in obtaining a White House press pass . . . undoubtedly qualifies as [a] liberty [interest] which may not be denied without due process of law under the [F]ifth [A]mendment." *Sherrill*, 569 F.2d at 130–31. Then, just a few years ago, the Circuit affirmed that conclusion, reiterating that "a duly issued hard pass may not be suspended without due process." *Karem*, 960 F.3d at 665. Defendants make the point—no less than five times—that in their view, *Sherrill* and *Karem* were wrongly decided. *See* ECF No. 43 at 6, 13, 16, 21, 26. Fair enough. But as they know, that is a matter above this Court's pay grade. And so ultimately, they concede that *Sherrill* and *Karem* hold that "White House reporters have protectable due process rights in their hard passes." *Id.* at 21.

The second step of the due process inquiry asks, given the interests at stake, "what process is due" for those who may suffer a deprivation of those interests. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). As the Court explained in granting the temporary restraining order, the "general rule" is that "individuals must receive notice and an opportunity to be heard before the Government deprives them" of a constitutionally protected interest. *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of the Univ. of D.C.*, 56 F.3d 1469, 1472 (D.C. Cir. 1995) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)). And it was on that basis that the Court found that Plaintiffs were likely to succeed on the merits, because at that point—as Defendants conceded—no pre-deprivation process had been provided to Plaintiffs. Since then, Plaintiffs *have* been provided some form of notice and an opportunity to be heard, even if the record is silent about the outcome of that process. *See* ECF Nos. 16-1, 16-2, 16-3, 32-11.

Still, Plaintiffs are likely to succeed on this claim because they have been denied other aspects of due process that the D.C. Circuit described as constitutionally required before a reporter's White House hard pass is revoked. Before that happens, "'[e]lementary notions of fairness' require[] that [the reporter] 'receive fair notice not only of the conduct that [would] subject him to punishment, but also of the . . . magnitude of the sanction that [the White House] might impose.'" *Karem*, 960 F.3d at 665 (all but second and third alterations in original) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)). And the Circuit described the former requirement as demanding "explicit and meaningful standard[s]" that are "formally articulated or published." *Id.* at 666 (quoting *Sherrill*, 569 F.2d at 130–31). Moreover, the Circuit emphasized, the notice must be provided *before* the offending conduct occurred. *See id.* So in *Karem*, a letter informing the hard pass holder of a possible sanction after the offending conduct was inadequate. *See id.* Finally, because the suspension of a reporter's hard pass implicates important rights under the First Amendment, the Circuit held that any such suspension must be evaluated under a "particularly 'stringent vagueness [and fair-notice] test.'" *Id.* at 665 (alterations in original) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982)). Again, whatever gripes Defendants have with these due process requirements, it is the law of this Circuit that the Court must faithfully apply.

To put it mildly, Plaintiffs likely did not receive notice either of the conduct that would subject them to revocation of their hard passes, or of the magnitude of the revocation sanction itself, that would satisfy the "stringent" vagueness and fair notice test contemplated in *Karem*. There is simply nothing in the record before President Trump's September 18 social media post banning them from the White House that could have served either purpose. To underscore the point, as Plaintiffs point out, two of their reporters (one a Plaintiff here) had their hard passes

renewed *after* publishing articles that Defendants cite in their September 22 letters as supporting the potential revocation of their hard passes.[5]

Defendants argue that Plaintiffs received such notice from two sources. First, they offer up a January 2026 social media post from the White House Press Office stating that "President Trump has zero tolerance for [leaking classified information] and will continue to aggressively crack down on these illegal acts moving forward" to show that he has "repeatedly and publicly stated his expectations of the press and criticized Plaintiffs as fake news." ECF No. 43 at 21.[6] But President Trump's social media posts and statements expressing his view that Plaintiffs reporting is inaccurate or biased—even if those views have merit—hardly amount to "formally articulated and published" "explicit and meaningful standards" that come close to satisfying *Karem*. Nor does the White House Press Office's social media post that Defendants cite. That post does not suggest any change in policy or a new standard of conduct applicable to anyone—and does not hint at the sanction imposed here.

Second, Defendants invoke the federal criminal prohibition against publishing classified information. *See* ECF No. 43 at 21–22 (quoting 18 U.S.C. § 798). That statute did not provide Plaintiffs constitutionally adequate notice under *Karem* either. As Plaintiffs point out, Defendants have not even tried to assert that Plaintiffs published any of the four specific categories of information covered by the statute. ECF No. 44 at 11–12. More importantly, the Court is unaware of

[5] In January 2026, a CNN reporter published an article titled "Inside Plans to Rebuild the 'Top-Secret' Bunker Beneath the White House East Wing"; her hard pass was renewed in June 2026. ECF No. 32-18 ¶¶ 4, 15. Moreover, in June 2026, an MS NOW reporter detailed that an anonymous White House official told MS NOW "that President Trump underestimated the willingness of Iran to resume conflict." ECF No. 16-2 (internal quotations omitted). The reporter's hard pass was renewed afterward. ECF No. 32-20 ¶ 24.

[6] White House Press Office (@PressSec), X (Jan. 14, 2026, 10:31 a.m.).

any occasion in which the government has sought to apply that statute—on the books for over half a century—to reporters similarly situated to Plaintiffs. That lack of precedent fatally undercuts the notion that the statute itself provided fair notice to Plaintiffs that its standards would be applied to them in the way Defendants propose. And last, again, this criminal statute could not have put Plaintiffs on notice of the sanction at issue here.[7] *Karem*, 960 F.3d at 665.

### 2. Plaintiffs Are Likely to Succeed on their First Amendment Retaliation Claim

Plaintiffs also assert that Defendants unlawfully retaliated against them for exercising their First Amendment rights. "[T]he First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (citation omitted). The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). And even "ordinarily permissible exercise[s] of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right." *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) (cleaned up). To succeed on a claim for unlawful retaliation, a plaintiff must show that "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258

[7] To the extent that Defendants assert that the September 22 letters provided Plaintiffs the required notice, *see* ECF No. 43 at 16, because the letters were sent *after* the conduct for which Defendants seek to revoke their hard passes, they do not pass muster under *Karem*. 960 F.3d at 666. In any event, much of the standards reflected in the letters are the sort of unarticulated or vague standards that *Karem* rejected.

(D.C. Cir. 2016).

Defendants do not dispute that Plaintiffs satisfy the first element because they "engage in conduct protected by the First Amendment." ECF No. 43 at 18. That makes sense. "[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs" including discussions of "candidates, structures, and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes. The Constitution specifically selected the press . . . to play an important role in the discussion of public affairs." *Mills v. Alabama*, 384 U.S. 214, 218–19 (1966).

As for the second element, it is likely that President Trump's revocation of Plaintiffs' hard passes is the sort of action that would deter a reasonable reporter or news organization from publishing stories to which he objects. The revocation of Plaintiffs' hard passes matters a lot as to how, whether, and to what extent they can do their jobs. As Plaintiffs attest, a hard pass is crucial to covering the White House because it allows reporters "immediate, unescorted access to the areas of the White House complex designated for the press." ECF No. 2-1 at 13. Without hard passes, Plaintiffs would miss the newsworthy events that often happen at the White House with "little or no notice." *Id.* Indeed, the effect on Plaintiffs' ability to do their jobs is so significant that in *Sherrill* and *Karem* the D.C. Circuit characterized the loss of a hard pass without adequate process as implicating a separate *constitutional* interest. *See Sherrill*, 569 F.2d at 130–31; *Karem*, 960 F.3d at 667–68. And if a one-month suspension from the White House grounds is "an eon in today's news business," then it is likely that the open-ended ban here would chill a reporter's work. *Karem*, 960 F.3d at 665.

President Trump's own comments suggest that he *intended* the revocation of Plaintiffs' hard passes to alter their reporting on him, bolstering the case that his action here is sufficient to

deter a reporter of ordinary firmness from reporting in the same way she had before. After explaining that he excluded Plaintiffs from the White House because they "purposely write negative news . . . to try and diminish the Republicans and a Republican administration," President Trump remarked that he is prepared to take "the ban . . . as far as you can," but that he would "love it" if they "could straighten themselves out." ECF No. 32-4 at 14, 27–28. And while Defendants argue that Plaintiffs have not met the second element because there is no sign they have stopped their critical coverage, the standard the Court must apply is an objective one, so that is hardly dispositive. *See, e.g.*, *Media Matters for Am. v. Paxton*, 138 F.4th 563, 581 (D.C. Cir. 2025) (referring to the "'ordinary firmness' test" as "objective").

Defendants also rely on an out-of-circuit case to argue that President Trump's decision to revoke Plaintiffs' hard passes and ban them from the White House grounds is insufficiently chilling to meet the second element of retaliation. *See* ECF No. 43 at 7, 18–19. In *Baltimore Sun Co. v. Ehrlich*, Maryland's governor prohibited anyone in that state's executive branch from speaking to a reporter and a columnist at a specific newspaper because his press office felt "that currently both are failing to objectively report on any issue dealing with [his] Administration." 437 F.3d 410, 413 (4th Cir. 2006). The Fourth Circuit found the directive at issue—which "select[ed] among reporters when granting interviews or providing access to nonpublic information"—"a pervasive feature of journalism" and "so commonplace" that to allow a retaliation claim to proceed would "plant the seed of a constitutional case in virtually every interchange." *Id.* at 417–18 (internal quotation marks omitted).

Defendants argue that subjecting the two journalists in *Ehrlich* to a "no-comment" policy is "much stronger medicine" than the revocation of Plaintiffs' hard passes. 437 F.3d at 417; ECF No. 43 at 18–19. Not so. For one thing, the action here is far broader—impacting 78 reporters

and three major news organizations. ECF No. 44 at 14. But more importantly, the ban at issue here cuts far deeper into an individual reporter's ability to do her job. To repeat, the ban threatens to cut off all Plaintiffs' access to the White House press area—a space open to many of their competitors—thereby restricting their ability to observe happenings there firsthand, immediately report on those activities, and try to engage with government officials. By contrast, a government official's decision to decline to speak to a reporter does not affect all these other aspects of a reporter's job. And no court—including this one—has suggested that such a commonplace decision would implicate a reporter's constitutional rights. *Sherrill*, 569 F.2d at 129 (distinguishing Sherrill's challenge from one challenging "the discretion of the President to grant interviews or briefings with selected journalists"); *Ehrlich*, 437 F.3d 410 at 418 (public officials "regularly subject all reporters to some form of differential treatment based on whether they approve of the reporters' expression"); Hr'g Tr., *CNN v. Trump*, No. 1:18-cv-2610 (TJK), 2018 WL 9436958 (D.D.C. Nov. 16, 2018) ("In fact, *Sherrill* explicitly recognizes the President's right to engage with whomever he pleases. Certainly, he need not ever call on Mr. Acosta again.").

Plaintiffs have also met the third element of their retaliation claim by showing that there is likely a causal link between the exercise of their First Amendment rights and the revocation of their hard passes and exclusion from the White House press area. The record is clear that President Trump made the decision at issue. And his announcement of the ban and later remarks explaining the reason for it make this a straightforward conclusion: President Trump likely banned Plaintiffs from the White House because he believes that their reporting is generally inaccurate and biased against him.

When President Trump first declared that he was "banning" Plaintiffs from the White House, he said he was doing so "as a result of their constant 'reporting' of 'FAKE NEWS.'" ECF

No. 32-3. He wrote that Plaintiffs "shouldn't be able to constantly write or report FICTION and LIES when they're covering the President of the United States, the Trump Administration, or the United States of America." *Id*. The next day, when asked about whether there was any "particular reason" for the ban, he responded: "No . . . it's really just cumulative stories over the last two years. . . . [T]hey purposely write negative news. And they do that because they want to try and diminish the Republicans and a Republican administration. And honestly, we've done a fantastic job. Look at the numbers, look at the economic numbers. We have more money coming into our country today than ever before." ECF No. 32-4 at 14. His posts on September 21 also focused on "Fake News," and how Plaintiffs had "trivialize[d]" and "demean[ed]" his accomplishments, including that he had won re-election in a "LANDSLIDE." ECF Nos. 32-5, 32-6. His subsequent comments about the ban, including his interview with Time Magazine, again focused on his view that Plaintiffs had failed to give him proper credit for his achievements, including winning re-election in 2024. *See* ECF No. 44-2 at 6. "If I do the finest thing, if I found the cure to cancer, they would say, 'Why didn't he move quicker?'" *Id.*

Presidents have criticized the media along these lines since time immemorial. And as mentioned above, no one should read this decision as suggesting that President Trump's complaints are meritless. Still, his comments are more than enough to show a likely causal link between Plaintiffs' protected First Amendment speech and his revocation of their hard passes.

Defendants respond by arguing that, notwithstanding President Trump's other grievances with them, Plaintiffs have failed to show causation because President Trump or some other official "would have reached the same decision . . . even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); ECF No. 43 at 14. Defendants argue that their "alternative ground" for revoking Plaintiffs hard passes is Plaintiffs'

failure to "maintain minimum professional journalistic standards by publishing classified and national security information." ECF No. 43 at 19. But for the reasons explained below, and especially in light of President Trump's remarks above, the record does not come close to supporting such a conclusion.

First, there is no evidence in the record that President Trump made the decision to revoke Plaintiffs' hard passes on national security grounds from the get-go, nor at any time has he directly stated that national security was the reason for his decision. When he announced the ban with his post on September 18, he did not mention national security. *See* ECF No. 32-3. When he was asked later that day about the "particular reason" for his action, he did not mention national security. *See* ECF No. 32-4 at 14. And while it is true, days later, that he used the phrase "national security" in subsequent social media posts about the ban, that expression appears to have been simply another way for him to describe Plaintiffs' alleged inaccuracies and unfairness in their reporting about topics like his achievements or electoral success. ECF Nos. 32-5, 32-6; *see also* ECF Nos. 32-4 at 19, 44-2 at 6. All this suggests that "national security" was merely a post-hoc justification for the decision, which greatly undermines the idea that President Trump "would have"—not "could have"—taken the same action in the absence of Plaintiffs' protected speech, even if it is not dispositive on that point.

Second, Defendants point to the September 22 letters sent to Plaintiffs as evidence that President Trump or another official would have taken the same action for national security reasons, even apart from Plaintiffs' protected speech. *See* ECF No. 43 at 19; ECF No. 47 at 35:13–36:25. Those letters, sent four days after the ban was announced, lay out a case for revoking Plaintiffs' hard passes based on alleged violations of "the standards of professionalism and decorum expected of those given access to the White House Complex," including "trafficking in verifiable falsehoods

about national security and other issues," and "publishing sensitive or classified information." ECF Nos. 16-1, 16-2, 16-3. But the letters hardly move the needle on this point. The letters appear to conflate concerns about otherwise protected speech ("trafficking in verifiable falsehoods about . . . other issues") with national security concerns. *Id.* On top of that, while the letters inform Plaintiffs that "the President has made the determination to revoke hard passes for members of your organization," the letters *do not* say—contrary to Defendants' argument that "the President has determined that Plaintiffs have reported classified or sensitive information on national security," ECF No. 43 at 17—that he made the decision for national security reasons. ECF Nos. 16-1, 16-2, 16-3. Again, while by no means dispositive, this undercuts the notion that President Trump would have reached the same decision anyway.

Third, Defendants try to make their case with each of the September 22 letters' "non-exhaustive list of reporting incidents," associated with each news organization, "including those that have threatened national security and/or spread falsehoods." ECF No. 47 at 35:13–36:25; ECF Nos. 16-1, 16-2, 16-3. They also rely on the Declaration of Kingsley Wilson, Press Secretary for the Department of Defense, now also known as the Department of War. ECF No. 47 at 35:13–36:25; ECF No. 16-5. These too come up short for Defendants' purposes.

In the Declaration, Wilson lays out how the publication of classified and sensitive information can undermine national security. ECF No. 16-5 ¶¶ 4–8. She describes how the Department of War decided to make a change in how reporters access the Pentagon to try to combat the publication of such information. *Id.* ¶¶ 9–16. She also describes how, in her view, that policy—whatever its details (they are never spelled out)—has been successful. *Id.* ¶¶ 17–19. The problem is that Wilson's declaration says little to nothing about President Trump's decision to revoke Plaintiffs' hard passes, or anything about White House press practices or operations. Wilson states that

"it is reasonable" to expect similar results from the White House's implementation of a similar policy, *id.* ¶ 20, but she does not purport to know much about the White House or the President's decision here. Thus, it matters little that even if, after discussions with people who work there, she thinks that the decision "would be effective in reducing the amount of information that is published that undermines national security." *Id.* ¶ 21. She also attests—in conclusory fashion—that based on three reporting incidents memorialized in the September 22 letters, the three media organizations here have demonstrated a "willingness" to publish sensitive information relating to national security—and more specifically, the security of the White House, the President, and other senior officials. *Id.* ¶¶ 22–24. But she offers no further specifics.

Viewed in light of the whole record, neither the September 22 letters nor the Wilson Declaration suggest that President Trump would have revoked Plaintiffs' hard passes and banned them from the White House even in the absence of the sort of reporting about him that he criticized when he announced the ban. They do not suggest that a ban based on national security concerns was in the works before President Trump made his announcement. The "reporting incidents" described in the letters stretch as far back as a year and a half. ECF Nos. 16-1, 16-2, 16-3. And to repeat, one of the reporters here had her hard pass renewed six months *after* publishing a story in January 2026 titled "Inside Plans to Rebuild the 'Top-Secret' Bunker Beneath the White House East Wing." ECF No. 32-18 ¶¶ 4, 15. Moreover, even accepting Defendants' claims that these incidents damaged national security in some way—a proposition that, as discussed below, they have not really tried to support with evidence here—such reporting is commonplace, for better or worse. Finally, it seems likely that if President Trump or another official would have banned Plaintiffs from the White House even in the absence of their protected speech, Defendants would not have had to scramble to make their case with unsigned letters and a declarant who does not

even work there.

As the Supreme Court explained in considering the government's explanation in a different context, the Court is "not required to exhibit a naiveté from which ordinary citizens are free." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). Freed from such a naiveté, it is not hard to conclude that President Trump likely banned Plaintiffs from the White House because he believes that their reporting is generally inaccurate and biased against him. For that reason, all told, Plaintiffs are likely to succeed on their First Amendment retaliation claim.

**3. Plaintiffs Are Likely to Succeed on their First Amendment Viewpoint Discrimination Claim**

Plaintiffs' final claim is that Defendants unlawfully discriminated against them based on their viewpoint. The level of scrutiny applied to government restrictions on private speech on government property depends on the type of forum at issue. *Ateba*, 133 F.4th at 121 (citing *Boardley v. Dep't of the Interior*, 615 F.3d 508, 514 (D.C. Cir. 2010); *Bryant v. Gates*, 532 F.3d 888, 894 (D.C. Cir. 2008)). A nonpublic forum is government property "that is not by tradition or designation a forum for public communication," *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018), but to which the government provides "selective access for individual speakers." *Ateba*, 133 F.4th at 122. The D.C. Circuit has held that "the White House Press Area"—the area that Plaintiffs' hard passes allow them to access—"is a nonpublic forum." *Id.* at 122.

The government has some flexibility to craft rules limiting speech in nonpublic forums; it can reserve the nonpublic forum "for its intended purposes, communicative or otherwise." *Ateba*, 133 F.4th at 123. A restriction on speech in a nonpublic forum "need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *United States v. Nassif*, 97 F.4th 968, 975 (D.C. Cir. 2024) (quoting *Int'l Soc. For Krishna Consciousness v. Lee*, 505 U.S. 672, 679 (1992)). Thus, the government cannot limit

access to a nonpublic forum based on a speaker's viewpoint. "Viewpoint discrimination is an 'egregious form of content discrimination,' which occurs when a government regulation 'targets not subject matter, but particular views taken by speakers on a subject.'" *Ateba*, 133 F.4th at 124 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

Plaintiffs are likely to succeed on their First Amendment viewpoint discrimination claim. For all the reasons explained elsewhere, it is likely that Plaintiffs were selected by President Trump for revocation of their access to the White House press area because he believes their coverage of him and his administration is generally inaccurate and biased—in other words, it was "an effort to suppress the speaker's activity due to disagreement with the speaker's view," *Nassif*, 97 F.4th at 975—rather than to vindicate any other purportedly "compelling governmental interest," *Sherrill*, 569 F.2d at 130, including maintaining professional standards for journalists or protecting national security.[8] ECF No. 43 at 16–18. Simply put, that is unlawful viewpoint discrimination. *See Mansky*, 585 U.S. at 12 (speech restrictions in a nonpublic forum must not be "an effort to suppress expression merely because public officials oppose the speaker's view").

**B. Plaintiffs Are Likely to Suffer Irreparable Harm**

Plaintiffs have also shown that they are likely to suffer irreparable harm absent preliminary relief. In the D.C. Circuit, it "has long been established that the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (internal quotation marks omitted). When constitutional harm is the basis for irreparable harm, the likelihood of success on the merits

---

[8] On top of that, it seems unlikely that the maintenance of professionalism, on its own, would amount to a compelling interest, as contemplated by *Sherrill*. That concern seems a far cry from the "compelling, even overwhelming interest" in the "physical security of the president." *Sherrill*, 569 F.2d at 130 (cleaned up).

overlaps heavily with the irreparable harm inquiry. *See id*. Thus, because Plaintiffs have shown a likelihood of success on their Fifth and First Amendment claims, they also meet the irreparable harm requirement.

The principle that the loss of constitutional freedoms constitutes irreparable harm was first recognized in the First Amendment context. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). "The loss of First Amendment freedoms" constitutes irreparable injury when "the party seeking it can demonstrate that its First Amendment interests are either threatened or in fact being impaired at the time relief is sought." *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (Thomas, J.) (cleaned up). Thus, because Plaintiffs have shown they are likely to succeed on their First Amendment retaliation claim, they have shown "an irreparable injury." *Media Matters*, 138 F.4th at 585. And the same is true because they have shown they are likely to succeed on their viewpoint discrimination claim. In addition, the D.C. Circuit has extended this maxim—that constitutional injury is irreparable—to the due process context as well. In *Sherrill* and *Karem*, it concluded that "the precise harm complained of here—a violation of Fifth Amendment due process rights"—supports irreparable harm. *Karem*, 960 F.3d at 667–68 (discussing *Sherrill*). So too here, because Plaintiffs have shown they are likely to succeed on their due process claim.

**C. The Remaining Factors Favor Preliminary Relief**

The final two factors—the balance of the equities and the public interest—also favor Plaintiffs. These two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. As Plaintiffs have shown, the revocation of their hard passes likely violated their Fifth and First Amendment rights. And "enforcement of an unconstitutional law is always contrary to public interest." *Karem*, 960 F.3d at 668 (citation omitted). Moreover, it is "[n]ot only newsmen and the publications for which they write, but also the public at large" that has "an interest protected by

the [F]irst [A]mendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information." *Sherrill*, 569 F.2d at 129–30. Given the importance of the free press, which "stands as one of the great interpreters between the government and the people," *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936), both Plaintiffs and the public have an abiding interest in enjoining Defendants' revocation of Plaintiffs' passes.

On the other side of the ledger, Defendants invoke their interest in protecting "classified and sensitive national security information." ECF No. 43 at 24. This is an interest the Court takes seriously. But on this record—and especially given that Plaintiffs have shown a likelihood of success on the merits and that they are likely to suffer irreparable harm—it does not tip these factors in Defendants' favor.

To begin, there is no evidence that President Trump relied on any of the "reporting incidents" that purportedly "threatened national security/and or spread falsehoods" referenced in the September 22 letters when he decided to revoke Plaintiffs' hard passes, or any direct evidence that national security was even on his mind then. ECF Nos. 16-1, 16-2, 16-3. To repeat, while Defendants argue that "the President has determined that Plaintiffs have reported classified or sensitive information on national security," and cite the September 22 letters in support, ECF No. 43 at 17, the letters simply do not say that he made any such determination. And strikingly, there is just about no evidence in the record to explain or justify the "ban" from a national security perspective. For example, there is little to support the notion that these incidents did in fact damage national security or the safety of any public official. The Wilson Declaration only addresses three of them, one relating to each news organization. ECF No. 16-5 ¶¶ 24–25. But a close read reveals that Wilson attests only, in conclusory fashion, that Plaintiffs were willing to publish information

"relating to" the "security of the White House and the President"; "without regard for national security or the safety or security of senior government officials"; and that "undermine[d]" the "security of the White House and the President." *Id.* And while the last formulation suggests some impact on national security, Wilson is silent about how, and to what extent, the reporting did so. Amazingly, Defendants appear to have been unperturbed by that same story when they renewed that reporter's hard pass back in June. ECF No. 32-18 ¶¶ 4, 15. And to repeat, Wilson makes essentially no representations about the decision to revoke Plaintiffs' hard passes, or White House press practices or operations, which is unsurprising given that she does not work there. In the end, Defendants do not even bother to identify what specific information in any of these "reporting incidents" was allegedly classified or sensitive.

Defendants—for whatever reason—chose not to submit any other material, classified or unclassified, under seal or *ex parte*, in support of their asserted national security interest. The Court does not question the deference courts afford to the government's national security determinations in many contexts. *See Holder v. Humanitarian L. Project*, 561 U.S. 1, 334–35 (2010). But unlike in *Holder*, for example, there is practically nothing national security-related in the record connected to the President's decision to revoke Plaintiffs' hard passes to which the Court can defer.[9]

For these reasons, Plaintiffs have satisfied the four *Winter* factors and have shown that they are entitled to preliminary relief.

[9] Defendants' invocation of their national security interest is also undermined by the weak connection between that interest and the revocation of Plaintiffs' hard passes. As Plaintiffs point out, many of the reporters who authored the reporting cited in the September 22 letters did not even hold hard passes. *See* ECF No. 44 at 18; *see also* ECF No. 21 ¶¶ 5–6; ECF No. 22 ¶¶ 5–6; ECF No. 32-19 ¶¶ 11–12. And in the other cases, Defendants offer no specific reason to believe that the reporter's possession of the hard pass facilitated the reporting.

## IV. The Court Will Require Plaintiffs to Post a Nominal Bond

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Circuit has acknowledged the "widely recognized discretion" of a district court "not only to set the amount of security but to dispense with any security requirement whatsoever." *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980).

In entering the temporary restraining order here, the Court required Plaintiffs to post a nominal bond of $1.00. *See* ECF No. 24 at 8. Some courts have treated the security for a temporary restraining order as security for a preliminary injunction. *See, e.g.*, *BCCI Holdings (Luxembourg) v. Mahfouz*, No. 92-cv-2763 (JHG), 1993 WL 45221, at *6 (D.D.C. Feb. 12, 1993); *Equalia, LLC v. Kushgo LLC*, No. 16-cv-02851, 2017 WL 277495, at *5 (D. Nev. Jan. 20, 2017) (finding the security for the temporary restraining order was enough because "the Court does not find [additional security] would be required based upon likelihood of success on the merits"). Still, the Court finds it appropriate to consider anew whether and in what amount to require a bond and again finds that, given the lack of representation that Defendants will sustain any monetary injury from an injunction and the importance of the rights Plaintiffs seek to vindicate, it will impose another nominal bond of $1.00. *See N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 315 (D.D.C. 2025) (defendants had "not sufficiently demonstrated any likelihood of suffering costs or damages if they are later found to have been wrongfully enjoined.").

## V. Conclusion

For all the above reasons, the Court will grant Plaintiffs' motion for a preliminary injunction and extend the relief already awarded, which will continue to preserve the status quo while

this case proceeds.[10] A separate order shall issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 13, 2026

[10] Defendants make a perfunctory, two-sentence request for the Court to stay any injunction pending appeal. For all the reasons explained above, they have not shown that the requirements for a stay pending an appeal are met. *See Nken*, 556 U.S. at 434.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC. et al.,

*Plaintiffs*,

v.

DONALD J. TRUMP et al.,

*Defendants*.

Civil Action No. 26-3287 (TJK)

**ORDER**

For the reasons set forth in the Court's accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1. Plaintiffs' Motion for a Preliminary Injunction, ECF No. 32, is **GRANTED**.
2. Defendants (except for President Trump) and their agents, representatives, and all persons or entities acting in concert with them, shall not execute, implement, or enforce the September 18, 2026, decision to revoke the White House "hard pass" press credentials held by employees of CNN, MS NOW, and POLITICO, thereby maintaining the status quo since the Court's entry of a temporary restraining order on September 24, 2026. ECF No. 24.
3. Plaintiffs shall post a $1.00 bond in accordance with Federal Rule of Civil Procedure 65(c) by October 19, 2026.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 13, 2026